J-S45045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRADLEY EUGENE TASSA | : | |
| | : | |
| Appellant | : | No. 1313 MDA 2023 |

Appeal from the PCRA Order Entered September 18, 2023
In the Court of Common Pleas of Snyder County Criminal Division at
No(s):  CP-55-CR-0000322-2020

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　**FILED MARCH 14, 2025**

Bradley Eugene Tassa appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. This matter returns to us after a remand to the PCRA court to allow Tassa to file a proper statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) ("1925(b) statement") *nunc pro tunc* and for the PCRA court to issue a Pa.R.A.P. 1925(a) opinion ("Rule 1925(a) opinion"). We now affirm.

In January 2022, Tassa entered a *nolo contendere* plea to identity theft.[1] The following month, on February 17, 2022, the trial court sentenced Tassa to six months to five years' imprisonment.

On January 13, 2023, Tassa filed a *pro se* PCRA petition. Counsel was appointed and filed an amended petition in May 2023 after he was granted an

---

[1] 18 Pa.C.S.A. § 4120(a).

extension. The court held a hearing on the petition on September 15, 2023. On September 18, 2023, the court entered an order denying the petition.

On September 20, 2023, Tassa filed a notice of appeal from the order denying his PCRA petition. The court ordered Tassa to file a Rule 1925(b) statement. On October 5, 2023, Tassa filed his 1925(b) statement, which included the following issue: "Whether the trial court erred/abused [sic] when it denied [Tassa's] Petition for Post Conviction Relief?" Rule 1925(b) statement, 10/5/23, at 1. On November 17, 2023, the PCRA court filed a responsive opinion, finding Tassa's issues on appeal to be waived because Tassa's 1925(b) statement was overly broad and vague.

On December 1, 2023, Tassa's counsel filed a petition to withdraw his representation as he reported he was closing his practice. On December 8, 2023, the PCRA court granted counsel's request to withdraw and appointed new counsel.

On June 24, 2024, this Court issued a memorandum finding that Tassa's Rule 1925(b) statement was so deficient that it precluded review of all his issues on appeal such that counsel was *per se* ineffective. **See Commonwealth v. Tassa**, No. 1313 MDA 2023, 2024 WL 3099525, at *2 (Pa.Super. filed June 24, 2024) (unpublished mem.). We therefore remanded the case for Tassa's new counsel to file a Rule 1925(b) statement *nunc pro tunc* and for the PCRA court to issue a Rule 1925(a) opinion. **See id.** at *3.

On remand, Tassa's counsel filed a Rule 1925(b) statement on July 18, 2024. The PCRA court filed its Rule 1925(a) opinion on August 28, 2024. Both parties have filed briefs with this Court.

In his brief, Tassa raises the following issue in his Statement of Question Involved: "Whether the [PCRA] court erred/abused [sic] when it denied [Tassa's] Petition for Post Conviction Relief?" Tassa's Br. at 7.

Upon review, Tassa has, in fact, identified three specific issues in his brief, which we rephrase as follows: (1) Whether the PCRA court erred in determining that Tassa made a knowing, intelligent, and voluntary *nolo contendere* plea since he repeatedly stated that he did not understand the proceedings, the case against him, or the plea offer that was made to him?, (2) whether the PCRA court erred in determining that Tassa waived his right to counsel?, and (3) whether the PCRA court erred in determining that Tassa would not have been appointed counsel due to his income since the interest of justice required it based on Tassa's lack of understanding and his change in financial status? ***See id.*** at 12-13.

Pursuant to Pennsylvania Rule of Appellate Procedure 2116(a), "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. " Pa.R.A.P. 2116(a). The Rule further provides that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." ***Id.***

Here, although the three issues were not included in the Statement of Questions Involved section, the issues were raised in Tassa's Rule 1925(b) statement, the PCRA court addressed the issues in its Rule 1925(a) opinion, and both parties briefed the issues. Because the noncompliance does not substantially impede our review, we decline to find waiver. *See Kern v. Kern*, 892 A.2d 1, 6 (Pa.Super. 2005) (stating "as a practical matter, this Court quashes appeals for failure to conform to the Rules of Appellate Procedure only where a failure to conform to the Rules results in the inability of this Court to discern the issues argued on appeal"). We thus procced to address the merits.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Tassa first argues that his *nolo contendere* plea was not knowing, voluntary, or intelligent. Tassa's Br. at 16. He asserts that despite his request for a public defender, he was not represented by counsel at the plea hearing. *Id.* He states that he was denied a public defender because of his household income. *Id.* at 8. Tassa notes that he did not graduate from high school, has difficulty reading and writing, and receives disability benefits. *Id.* He points out that when he was asked whether his plea was knowing, voluntary, or intelligent, he responded, "I guess." *Id.* at 16-17 (citation to transcript omitted). He also argues that at his sentencing hearing, he again requested

counsel and stated he had had difficulty getting an attorney because "I don't know how to go get this stuff taken care of," and, "I'm slow and I don't comprehend and can't read or write very good." *Id.* at 17 (citations to transcript omitted). In Tassa's view, "[t]hese comments made by [him] show[] that his plea was not done in a knowing, voluntary, and intelligent manner." *Id.*

Before accepting a plea, the trial court must conduct an on-the-record inquiry to determine whether the plea is knowingly, intelligently, and voluntarily tendered. *Commonwealth v. Hodges*, 789 A.2d 764, 765 (Pa.Super. 2002) (citing Pa.R.Crim.P. 590). The court must develop a record that affirmatively shows that the defendant understands: (1) the nature of the charges to which the defendant is pleading guilty; (2) the factual basis for the plea; (3) the right to a jury trial; (4) the presumption of innocence; (5) the permissible ranges of potential sentences and fines; and (6) that the court is not bound by the terms of the agreement unless it accepts it. *Commonwealth v. Kelley*, 136 A.3d 1007, 1013 (Pa.Super. 2016). In deciding whether a guilty plea was knowing, intelligent, and voluntary, a court should consider the totality of the circumstances surrounding the entry of the plea. *Commonwealth v. Allen*, 732 A.2d 582, 588-89 (Pa. 1999). There is a presumption that a plea was knowing, intelligent, and voluntary, and the defendant bears the burden of proving otherwise. *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa.Super. 2003). Additionally, a defendant who elects to plead guilty is required to answer all questions during the plea

colloquy truthfully and may not later assert grounds for withdrawing the plea that contradict the defendant's statements during the colloquy. ***Id.***

Here, the record indicates that at the start of the plea hearing, Tassa voluntarily gave up his right to be represented by counsel and agreed to proceed *pro se*:

> THE COURT: Are you giving up your right to be represented by counsel voluntarily, intelligently, and knowingly?
>
> MR. TASSA: I guess.
>
> THE COURT: It's a yes or it's a no.
>
> MR. TASSA: Yes.

N.T., 1/18/22, at 6. The court then conducted an on-the-record colloquy, wherein Tassa testified that he agreed to the terms of the Commonwealth's plea agreement and that no one had threatened him or promised him anything in exchange for entering a plea. ***Id.*** at 8. When he was asked if he agreed to the nature of the charge against him, he asked, "What was the charge again?" ***Id.*** at 8-9. After the Commonwealth explained the charge of identity theft, Tassa affirmed that he understood the nature of the charge, the elements of the charge, and the potential punishments. ***Id.*** at 9. The court further colloquied Tassa, and Tassa acknowledged that he was presumed innocent, he had a right to a jury trial or a trial by a judge, the Commonwealth had the burden to prove guilt beyond a reasonable doubt, the court was not required to accept the plea agreement, and it was his decision to enter a plea. ***Id.*** 9-10, 12. He also agreed to the Commonwealth's recitation of the factual basis for the plea. ***Id.*** at 12-13, 14-15. Finally, when asked again by the court if he

was "making this *nolo contendere* plea voluntarily, intelligently, and knowingly," Tassa responded, "Yes." ***Id.*** at 15.

In rejecting Tassa's claim that his plea was unknowing, the PCRA court opined:

> It is clear from the record that [Tassa] understood the proceedings against him and the plea agreement. The [c]ourt and the Commonwealth reviewed every aspect of the plea agreement with [Tassa], and [Tassa] asked follow-up questions regarding those statements. [Tassa] was presented with a written record of the charges against him over a year prior to the date of the plea agreement. He was re-presented with this document on the day of the plea agreement, and the charges against him. The nature of the case was discussed at length on the record in front of him. There is no indication in the record that [Tassa] did not fully understand the charges against him or the plea itself.

PCRA Court Opinion, filed 8/28/24, at 7.

We agree. The record supports the PCRA court's conclusion that Tassa's plea was voluntary, knowing, and intelligent, and the PCRA court committed no error of law. Tassa's first claim is without merit.

Tassa next argues that the PCRA court erred in determining that he waived his right to counsel. He states that he applied for a public defender but was denied because his household income was too high. Tassa's Br. at 8. Tassa points out that at multiple hearings, he requested that counsel be appointed because he had difficulties understanding the proceedings. ***Id.*** He argues that the court "referred to [his] denial for services from the public defender's office but did not make inquiry on [his] financial ability to afford counsel." ***Id.*** at 17. Citing Pennsylvania Rule of Criminal Procedure Rule 122,

he notes that a court may appoint counsel regardless of indigency when, in its opinion, the interests of justice require it. *Id.* at 18 (citing Pa.R.Crim.P. 122(A)(3), cmt.). Tassa concludes that his waiver of counsel was not knowing, intelligent or voluntary and the court unconstitutionally deprived him of his right to counsel. *Id.* at 20.

"The Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution guarantees a criminal defendant the right to assistance of counsel." *Commonwealth v. McLendon*, 293 A.3d 658, 665 (Pa.Super. 2023). However, the right to counsel is not absolute and may be waived or forfeited. *See Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178-79 (Pa. 2009). "Waiver is an intentional and voluntary relinquishment of a known right." *Id.* at 1179 (citation and internal quotation marks omitted). Conversely, forfeiture "does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's extremely serious misconduct or extremely dilatory conduct." *Id.* (citation and internal quotation marks omitted). "Where a defendant forfeits his right to counsel, Pa.R.Crim.P. 121 and its waiver colloquy requirements do not apply." *McLendon*, 293 A.3d at 666. Further, "where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel." *Lucarelli*, 971 A.2d at 1179.

Here, the record indicates that Tassa was given numerous opportunities to obtain counsel and failed to do so. Tassa appeared *pro se* at a hearing on January 19, 2021. The court instructed Tassa as follows:

> THE COURT: You . . . have the right to be represented by an attorney. If you wish [c]ourt-appointed counsel because you don't earn enough money to hire your own attorney, you must apply for representation by the Public Defender's Office. That's on the third floor of the courthouse. If you wish a [c]ourt-appointed attorney, you must apply today. If you do not apply for representation today, if at any point we get to another proceeding and you realize you're in more trouble than you thought you were in, and you wish to delay or continue the proceedings, it is unlikely that I will allow a continuance if you've not applied for an attorney today. Do you understand?
>
> MR. TASSA: Yes.

N.T., 1/19/21, at 3-4.

At a pre-trial conference/plea hearing held on April 1, 2021, Tassa told the court that he had hired an attorney, but his attorney could not be present that day. N.T., 4/1/21, at 4-5. The court noted that no attorney had entered their appearance on Tassa's behalf but continued the matter so that counsel could be present. **Id.** at 5-6.

Nearly three months later, at a pre-trial conference/plea hearing held on June 29, 2021, Tassa appeared *pro se*. The court again explained to Tassa his right to be represented by an attorney. N.T., 6/29/21, at 4-5. The following exchange then occurred:

> THE COURT: Is it your desire to proceed today without the benefit of an attorney?
>
> MR. TASSA: No.

THE COURT: Now, on January 19th I arraigned you and I told you the exact same thing except I also told you if you wanted an attorney you were to go right upstairs to the Public Defender's Office and apply that day. Did you do that?

MR. TASSA: I applied a couple times. I applied – this would be my sixth time that I applied for a Public Defender.

THE COURT: And you were denied?

MR. TASSA: Yep.

THE COURT: Why?

MR. TASSA: Because I apparently didn't give them enough information.

THE COURT: You didn't provide them with proof of your household income?

MR. TASSA: Well, I gave them a lot of –- like, me and my wife gave them a lot of information but apparently it wasn't enough yet and I still had to give them more . . .

My wife did forget to put on the paper how much I get for Social Security.

THE COURT: Well, Mr. Tassa, your five or six times turned out to be two.

MR. TASSA: Not for the Public Defender but for like other lawyers -- other paid ones -- but we were denied for too.

[THE COMMONWEALTH]: Judge, did you want to know that you gave him the speech in April too?

THE COURT: Yep, I did note that. What attorneys did you speak with?

MR. TASSA: I had one of them but he turned around and walked away after I paid him [$1,200].

THE COURT: Who was that?

MR. TASSA: I forget what his name was.

THE COURT: Where's his office?

MR. TASSA: I think it was down this way I think.

> THE COURT: Well, down this way is a big area.
>
> MR. TASSA: I'm not quite sure.

*Id.* at 5-6.

The court noted that it spoke to the Public Defender's Office, and it told the court that Tassa failed to provide it with his court papers and household income. *Id.* at 7. The court was also told by the Public Defender's Office that it called Tassa and told him what information it needed. *Id.* at 8. The court instructed Tassa to reapply to the Public Defender's Office and told him that the office was located on the third floor of the courthouse. *Id.* at 10. The court informed Tassa that he needed to provide his wife's pay stubs, his Social Security disability statement, and his court papers. *Id.* The court scheduled the matter for trial. *Id.*

On September 21, 2021, Tassa again appeared *pro se* and was prepared to enter a plea. The court questioned Tassa about his right to an attorney:

> THE COURT: When you were arraigned, you were advised of your rights to be represented by an attorney. Do you recall being advised of those rights?
>
> MR. TASSA: Yes.
>
> THE COURT: Do you need me to explain those rights to you again?
>
> MR. TASSA: No.
>
> THE COURT: Is it your intention to proceed today without having the benefit of counsel?
>
> MR. TASSA: Yes.

N.T., 9/21/21, at 3. The court then went over the terms of the proposed plea agreement. When the court asked Tassa whether he was in agreement with

the plea, he said, "No." *Id.* at 5. As a result, the court scheduled the case for trial. The following exchange then occurred:

> THE COURT: . . . If you're getting an attorney, I suggest you get one. It is unlikely that I will continue your case so that you can get an attorney. [T]his is from 2020. So this has been going on for a long time . . .
>
> If you want [c]ourt-appointed counsel, Mr. Tassa, you need to fill out an application for the Public Defender today. You should have done that on the day you were arraigned. So you could be picking a jury on your own if you don't have an attorney. Do you understand?
>
> MR. TASSA: Yes, sir.
>
> THE COURT: Do you have any questions?
>
> Mr. TASSA: No, sir.

*Id.* at 6-7.

On January 7, 2022, Tassa appeared *pro se* for a pre-trial/plea conference hearing. The court asked Tassa, "Is it your intentions to proceed today without having the benefit of counsel?" Tassa replied, "Yes." N.T., 1/7/22, at 2. After the court went over the terms of the proposed plea agreement, Tassa stated that he was not in agreement with the plea. *Id.* at 5. The court scheduled Tassa's case for trial to take place on January 18, 2022. *Id.* at 6.

On January 18, 2022, Tassa appeared *pro se* for a jury selection/plea hearing. He stated that he applied for a public defender to represent him, but he was denied because he and his wife made too much income to qualify for one. N.T., 1/18/22, at 4-5. Tassa explained that he tried to get a public defender in Mifflin County but was denied because his case was in Synder

County. *Id.* at 5. Tassa then agreed that he was voluntarily, intelligently, and knowingly giving up his right to be represented by counsel and entered his plea, as previously stated above.

At the sentencing hearing on February 17, 2022, Tassa appeared *pro se*. He informed the court that he believed he now qualified for a public defender because his household income had changed since he was no longer with his wife. N.T., 2/17/22, at 8. However, he stated he did not reapply to the Public Defender's Office because he did not "know what application I'm here to fill out." *Id.* at 3. He also stated that he had been trying to get another public defender in Mifflin County. *Id.* at 8-9. The court then asked him why he was applying for a public defender in different county that had no relation to this case, and he replied, "Because I thought I could get one from up there to come down here." *Id.* at 9. After going over the history of delays in the case, the court declined to continue it again and proceeded to sentencing. *Id.* at 13-14. After the court sentenced Tassa, it reviewed Tassa's post-sentence rights with him and informed him, "You have the right to be represented by counsel in connection with these post-sentence rights," and, "[Y]ou still have the opportunity to get an attorney to review the sentence[.]" *Id.* at 21-22.

The PCRA court found that Tassa's failure to obtain counsel throughout the case was a dilatory tactic and he forfeited his right to counsel. It explained:

> [Tassa] had a period of over a year [and] failed to retain counsel. [Tassa] claimed that he was unable to financially obtain private counsel. However, when the public defender's office denied him, it was in part to due their belief he could afford counsel, according to [Tassa] . . . . The public

- 13 -

defender's office determines the income needs of the parties, and this [c]ourt does not disrupt how that office operates. [Tassa] failed, over the course of the year, to adequately explain why he has been unable to retain private counsel. [Tassa] made repeated statements that he does not have the income to afford an attorney, and while that may be the case, [Tassa] provided no additional evidence to the [c]ourt about this need . . . . The [c]ourt also informed [Tassa] of his ability to retain a public defender if he met certain income guidelines and specifically directed him to the public defender's office on multiple occasions. Finally, the [c]ourt repeatedly informed [Tassa] that he could obtain private counsel to represent him and discussed his efforts to do so . . . . The [c]ourt finds that [Tassa's] statements about his ability to retain counsel, his alleged inability to properly apply to the public defender's office, and his claim of a learning disability impairing his ability to obtain counsel as disingenuous, and lacking credibility. As [Tassa] was aware, he was not approved by the public defender's office to get an attorney free of cost, [and based on Tassa's] blatant disregard of making any efforts to obtain private counsel, and the [c]ourt's efforts to aid [Tassa] in applying for a public defend[er] or obtaining private counsel, this [c]ourt determines that [Tassa] forfeited his rights to counsel.

PCRA Ct. Op. at 10-11 (footnotes omitted).

We find no error in the court's determination that Tassa forfeited his right to counsel. As the record reflects, Tassa failed to obtain counsel despite having over one year to do so, and despite being repeatedly advised by the court that he needed to do so. The court gave Tassa ample opportunity to obtain counsel and granted him several continuances. The court also explained at the numerous hearings how to apply to the Public Defender's Office for representation, the location of the office, and the paperwork he needed. Once it was determined that Tassa did not qualify for a public defender, it was incumbent upon him to retain private counsel. Tassa offered no proof that he

took the necessary steps to follow up with obtaining representation. Based on this conduct, the court did not err in finding that Tassa forfeited his right to counsel as the record supports the conclusion that he "put himself in this position intentionally." **Commonwealth v. Coleman**, 905 A.2d 1003, 1007-08 (Pa.Super. 2006) (citation omitted); **see also Commonwealth v. Wentz**, 421 A.2d 796, 799 (Pa.Super. 1980) (*en banc*) ("the defendant denied himself the assistance of counsel when he failed to take steps to retain counsel despite the admonishments of the trial court"). Accordingly, Tassa was not unconstitutionally deprived of his right to counsel.

In his final issue, Tassa argues the court "should have allowed for a new inquiry into his eligibility for appointed counsel through indigency" once he informed the court at his sentencing hearing that his household income had changed such that he may have qualified for appointed counsel. **Id.** at 19-20.

During sentencing, Tassa stated that his household income changed due to separating from his wife. **See** N.T., 2/17/22, at 2, 8. However, he admitted that he did not reapply for representation from the Public Defender's Office in Synder County after his change in financial circumstances. **See id.** at 2-3, 8-9. Rather, the only attempt he made to obtain counsel was to go to a Public Defender's Office in a different county that had no relation to this case. **Id.** at 9. The PCRA court found Tassa's statements not credible:

> [Tassa's] only effort to go to the public defender's office since his change in circumstance[s] was a statement that he attempted to go to the public defender's office in [Mifflin] County. [Tassa], at the sentencing, did not claim that he was denied at the [Mifflin] County Public Defender's office,

- 15 -

and did not claim that the office in [Mifflin] County had re-directed him to Snyder County. The [c]ourt deemed this testimony not credible . . . . [Tassa] attempted to claim he went to the wrong county to get a public defender and that he did not know he needed one from Snyder County. The [c]ourt told [Tassa] on numerous previous occasions where to get a public defender. Further, [Tassa] knew where to get a public defender in Snyder County, as he had already applied at least twice.

PCRA Ct. Op. at 12 (footnotes omitted).

The record supports the court's findings. Tassa made no attempt to obtain representation through the Public Defender's Office in Snyder County after his change in financial circumstances. The record reflects that he knew how to apply in that county because he did so at least twice before and was repeatedly told how to apply by the court. Tassa's final claim fails.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/14/2025

- 16 -